UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES THOMAS LOVE,

                Plaintiff,

v.

UNKNOWN BIGALOW et al.,

                Defendants.

_____/

Case No. 1:24-cv-223

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.27.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following DRF personnel: Sergeants Unknown Bigalow and Unknown Rideout; an unknown Prison Counselor (herein Unknown Party #1); Corrections Officers Unknown Collins, Unknown Cook, Unknown Stacey, and Unknown Horne; Resident Unit Managers Unknown Smith and Unknown Blair; Assistant Deputy Warden Unknown Garcia; Deputy Warden Unknown Marts; Warden Randee

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Rewerts; and Hearings Investigators K. Smith and Unknown Kurts. Additionally, Plaintiff sues Administrative Law Judge Unknown Hawkins.

Plaintiff alleges that he was involved in a physical altercation with another prisoner on December 2, 2023. After the altercation ended, unnamed corrections staff placed him in cell 500-20 on toplock, non-bond status pending a disciplinary hearing on a fighting misconduct charge. Plaintiff alleges that he may only be held in that status for a limited duration and that he was held in that status for 15 days, which exceeds the limits provided by policy directive and administrative rule. Additionally, Plaintiff complains that the cell he was placed in a had a metal cap over the electricity outlets so that he could not use any of his appliances. Plaintiff contends that such an outlet restriction is only allowed for specific misconducts, not including the misconduct of which he was accused.

Plaintiff contends that he complained to Defendants Bigalow, Rideout, Unknown Party #1, Smith, Blair, Colling, Cook, Stacey, Horne, Garcia, Marts, and Rewerts about the duration of his pre-hearing stay and the electricity cap. Plaintiff does not say when he complained to each Defendant or how they responded. Plaintiff remained in that cell from December 2, 2023, to December 17, 2023.

Plaintiff claims that Defendants K. Smith and Kurts failed to satisfy their duties as hearing investigators to collect evidence or testimony regarding the misconduct. On December 17, Plaintiff complained to Defendant Hawkins about the unlawful length of toplock pending the hearing, to no avail. Defendant Hawkins found Plaintiff guilty of the fighting misconduct and sanctioned Plaintiff with 30 days' loss of privileges and an additional 15 days of toplock. Plaintiff complains that he was stuck in the electricity capped cell for the duration of his sanctions.

The ALJ failed to provide Plaintiff with appeal forms. Plaintiff also requested those forms from the hearing investigators on December 17, 23, and 29, by way of kites, to no avail.

Plaintiff requested grievance forms to address the unlawful denial of his personal, religious, state, and legal property, as well as the electricity cap. He asked Defendants Bigalow, Rideout, Collins, Cook, Unknown Party #1, Smith, Blair, Stacey, and Horne. They declined because Plaintiff was on non-bond status.

Plaintiff claims that, on February 12, 2024, he gave his civil rights lawsuit papers to Defendant Unknown Party #1 to process and mail to this Court. Plaintiff reports that Unknown Party #1 took the legal mail to an area outside of Plaintiff's presence. Once the mail was outside of Plaintiff's presence, Plaintiff claims that Unknown Party # 1 destroyed the complaint, *in forma pauperis* motion, and affidavit of indigency and sent only the 6-month account statement to the Court. Plaintiff does not offer any facts that would support an inference that he has any first-hand knowledge regarding what happened to the mail once it was outside of Plaintiff's presence.[2]

---

[2] Plaintiff's "information and belief" allegations regarding the fate of his legal mail might be pure speculation. At this stage of the proceeding, however, the Court will accept the allegations as true. As the United States District Court for the Southern District of Ohio explained in *Gerling & Assoc., Inc. v. Odulair, LLC*, No. 2:26-cv-1000, 2017 WL 2790669 (S.D. Ohio June 28, 2017):

> [T]he Sixth Circuit permits this style of pleading in some circumstances, like when "a plaintiff may lack personal knowledge of a fact, but ha[s] 'sufficient data to justify interposing an allegation on the subject' or [must] 'rely on information furnished by others.'" *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447 (6th Cir. 2014) (quoting Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)). Circuits that have done a deep dive on the subject hold that even after *Iqbal* and *Twombly*, plaintiffs may plead facts "'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, *see, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual in-formation that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1949). But Rule 11 looms for the pleader who plays fast and loose with this type of pleading. Rule 11 makes signed pleading the signing attorney's certification that he or she performed "an inquiry reasonable under the circumstances . . . [and] the

Plaintiff seeks a declaration that Defendants' conduct violated the United States constitution and laws. He also seeks compensatory damages as follows:

$10,000.00 each against Bigalow, Rideout, Unknown Party #1, Collins, Cook, Stacey, Horne, Smith and Blair for denial of grievances;

$10,000.00 each against Bigalow, Rideout, Unknown Party #1, Collins, Cook, Stacey, Smith, Blair, Garcia, and Rewerts for enforcing the electricity cap;

$10,000.00 each against K. Smith, Kurts, and Hawkins for their violation of due process in the misconduct hearing;

$25,000.00 against Defendant Unknown Party #1 for destruction of Plaintiff's legal mail; and,

$100,000.00 lump sum in punitive damages.

(Compl., ECF No. 1, PageID.11.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b); *see also* Fed. R. Civ. P. 11(c) (Sanctions for violations of Rule 11(b)).

2017 WL 2790669, at *6.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff does not specifically identify any particular constitutional rights violated by Defendants' conduct. Construed liberally, Plaintiff's allegations implicate the First Amendment's protection of access to the courts and free speech through the mails, the Eighth Amendment's protection against cruel and unusual punishment, and the Fourteenth Amendment's due process protections.

### A.    Legal Mail

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati*

*v. Discovery Network, Inc.*, 501 U.S. 410, 427 (1993)) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted)).

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell*, 417 U.S. at 822; *see also Turner v. Safley*, 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell*, 417 U.S. at 822–23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

The MDOC policy directive regarding mail reflects its protected status. The MDOC's prisoner mail policy acknowledges that prisoners are "permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603." MDOC Policy Directive 05.03.118 ¶ D (eff. Nov. 6, 2023). Nonetheless, a significant goal of the policy directive is to prevent contraband from entering the prison. To achieve that goal, incoming mail is subject to search.

The prisoner mail policy directive identifies several categories of prohibited incoming mail. *Id*. ¶¶ OO–UU. The categories include "mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." *Id*. ¶ PP. With one exception, all incoming mail is "opened in one location and inspected . . . to determine if it contains money, controlled substances, or other

8

physical contraband." *Id.* ¶ EE. Physical contraband is confiscated prior to delivery of the mail. *Id.* The policy directive requires that the written content be "skimmed, and if it appears from skimming the content that the mail may violate th[e] policy, the item shall be read to determine if it is allowed." *Id.*

The one exception to the general practice of opening and searching all mail in one location exists for "mail requiring special handling." *Id.* ¶ EE. The most significant category of mail requiring special handling is "legal mail." *Id.*, ¶¶ HH–JJ.

The Sixth Circuit Court of Appeals, when considering the MDOC's mail policies, defined legal mail "to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials, via the U.S. Postal Service or alternative private courier services, and hand delivery." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). The MDOC has, over the years, modified its definition of incoming legal mail to include the following:

> Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above.

MDOC Policy Directive 05.03.118 ¶ HH (eff. Nov. 6, 2023). In some respects the MDOC definition is broader than the Sixth Circuit's definition. The fact that incoming mail falls within the ¶ HH definition does not, standing alone, require special handling. Special handling is only required if the prisoner requests in writing that his incoming legal mail receive special handling. *Id.* ¶ II.

Plaintiff's allegations that Defendant Unknown Party #1 destroyed his legal mail implicates Plaintiff's First Amendment right to free speech, his First Amendment right to access the courts, and his Fourteenth Amendment right to due process of law before being deprived of a liberty or property interest.

1.       **Access to the Courts**

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop*, 977 F.2d at 1009.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff has identified the underlying action frustrated by Unknown Party #1's destruction of his complaint—it is this action. But Plaintiff has not alleged any lost remedy. Therefore, Plaintiff has failed to state a First Amendment access to the courts claim upon which relief may be granted.

### 2.    First Amendment—Free Speech

Unknown Party #1's destruction of Plaintiff's outgoing legal mail also interfered with Plaintiff's right to freely communicate through the mails. To simply destroy someone's outgoing mail, legal or otherwise, might well be justified under *Turner* or it might not. Evaluating legitimate penological objectives under *Turner* and balancing the factors is a fact-intensive inquiry not well-suited to resolution on preliminary screening. But even accepting that Unknown Party #1's interference with Plaintiff's mail interfered with Plaintiff's free-speech right, that alone does not mean that Plaintiff has stated a First Amendment claim.

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993)), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing

11

*Sallier v. Brooks*, 343 F.3d 868, 879–80 (6th Cir. 2003); *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation). Recently, in *Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659 (6th Cir. Aug. 4, 2023), the Sixth Circuit, citing *Colvin*, confirmed that a single isolated event of tampering with legal mail "does not rise to the level of a constitutional violation." *Id*. at *3.

Plaintiff does not identify any other interference with his mail, legal or otherwise. Plaintiff offers no facts other than speculation that might justify considering the alleged disappearance of his pleadings as "blatant disregard" of rules or "arbitrary and capricious" action. Accordingly, because this is nothing more than an isolated incident, the Court concludes that Plaintiff has failed to state a claim upon which relief may be granted.

### 3.      Fourteenth Amendment—Due Process-Legal Mail

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff has a liberty interest in sending and receiving his mail. *See Procunier*, 416 U.S. at 428 ("The interests of prisoners and their correspondents in uncensored communications by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest . . . ."), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989). Moreover, the pages taken from Plaintiff were tangible personal property. Thus, Plaintiff may have a property interest as well. To state a claim for deprivation of a liberty or property interest without due process of law, Plaintiff must allege facts sufficient to show the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

A due process claim for deprivation of Plaintiff's liberty or property interests in his legal mail, however, would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, have "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544.[3]

---

[3] Although *Parratt* dealt specifically with the deprivation of a property interest, the Sixth Circuit has applied the doctrine to deprivations of liberty interests, *see, e.g.*, *Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (concluding that "[t]hough *Parratt v. Taylor* concerned the loss of property, we see nothing in its underlying rationale which would require a different treatment of due process claims for deprivation of liberty") (en banc), and specifically to a due process claim

Where the state provides such a post-deprivation remedy, the plaintiff must plead and prove the inadequacy of the remedy. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (explaining that "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong"). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of liberty or property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations he suffered, either negligent or intentional, of his liberty or property. Accordingly, Plaintiff's allegations that he was deprived of his liberty or property interests in his legal mail without due process of law fails to state a claim upon which relief may be granted.

### B.     Fourteenth Amendment—Due Process—Disciplinary Hearing

With regard to Plaintiff's disciplinary hearing, Plaintiff's allegations focus on the Defendants' failures to comply with the MDOC policy directives. Plaintiff contends that Defendants waited too long to conduct the disciplinary hearing, improperly kept him confined in inappropriate conditions before and after the hearing and failed to provide him forms to perfect his

---

regarding deprivation of a plaintiff's liberty interest in his mail, *Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669, at *3 (6th Cir. Jul. 31, 2023).

appeal. The Court concludes that Plaintiff is attempting to present a claim that Defendants violated Plaintiff's right to due process.

Plaintiff suggests that Defendants' failures to follow the timing limits set forth in the MDOC policy directives or the Michigan administrative rules constitute a violation of Plaintiff's due process rights. Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, *250* (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); ); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

Plaintiff's search in the policy directives and regulations for "language of an unmistakably mandatory character" to support a liberty interest is understandable. *Hewitt v. Helms*, 459 U.S. 460, 471 (1983). Under *Hewitt*, it was the presence of such mandatory language in procedural guidelines that might give rise to a protected liberty interest. *Id*. at 469–72. That framework was rejected and replaced in *Sandin v. Conner*, 515 U.S. 472 (1995).

The *Sandin* Court concluded that a prisoner would not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners

15

are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

For a prisoner like Plaintiff, who is serving a sentence for an offense committed after 2000, a major misconduct conviction results only in the accumulation of "disciplinary time." Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, any misconduct conviction had no impact on the duration of Plaintiff's sentence.

Furthermore, Plaintiff does not allege any facts suggesting that the misconduct convictions resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff notes that Defendant Hawkins gave Plaintiff 30 days' loss of privileges and then another 15 days' toplock in addition to the 15 days he had already "served" pending the hearing. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E. "Toplock," with limited exceptions, restricts a prisoner to his or her "own cell, room, or bunk and bunk area."

Both toplock and loss of privileges sanctions are considered less severe a sanction than segregation. Nonetheless, the Supreme Court has held the more severe sanction of segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally,

courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

The Sixth Circuit Court of Appeals has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship*, see Joseph*, 410 F. App'x at 868; *see also, e.g.*, *Jones v. Baker*, 155 F.3d 812, 812–23 (6th Cir. 1988) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

In light of that authority, it defies logic to suggest that the lesser penalties of loss of privileges and/or toplock for 30 days could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017)

(thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'"). Accordingly, Plaintiff fails to allege any facts suggesting that he was subjected to conditions that would implicate a liberty interest as a result of the misconduct ticket. Plaintiff's Fourteenth Amendment procedural due process claims premised upon misconduct proceedings and sanctions, therefore, will be dismissed.

### C.      Eighth Amendment

Plaintiff suggests that Defendants subjected him to harsh conditions while he was on 30 days' loss of privileges, 30 days' toplock, and capped electricity in his cell. The Court construes Plaintiff's allegations as a claim that Defendants inflicted cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

18

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

However, the only conditions about which Plaintiff complains are the 30 days' loss of privileges, 30 days' toplock, and the lack of electricity in his cell during December 2023 and January 2024. With regard to the restrictions that follow the imposition of loss of privileges or toplock sanctions, the Court is guided by authorities related to the more onerous sanction of segregation. "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth

Amendment Claim." *Harden-Bey*, 524 F.3d at 795 (internal quotation marks omitted) (quoting

*Murray v. Unknown Evert*, 84 F. App'x. 553, 556 (6th Cir. Dec.8, 2003).

Once again, logic dictates that the lesser sanctions of loss of privileges and/or toplock

would likewise be insufficient. In *Alexander v. Vittitow*, the Sixth Circuit Court of Appeals

considered the lesser sanction of loss of privileges:

> To establish a violation of the Eighth Amendment based on alleged cruel and
> unusual punishment, the prisoner must demonstrate that he was deprived of "the
> minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337,
> 347 (1981).
>
> Alexander's allegations fail to meet this standard. He alleges that he was "deprived
> of telephone use to call family, [a] yard, [an] email machine, call-outs, [and]
> exercise time" and that he was "locked in a cell for 23 hours a day," but he does not
> allege that he was denied any basic human needs. *Cf. Evans v. Vinson*, 427 F. App'x
> 437, 443 (6th Cir. 2011) (explaining that basic human needs for purposes of the
> Eighth Amendment "include food, clothing, shelter, medical treatment, and
> reasonable safety"). Temporary loss of privileges and confinement in segregation—
> without any allegations that basic human needs were not met—cannot establish an
> Eighth Amendment claim. *See, e.g., Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F.
> App'x 339, 345–46 (6th Cir. 2014) (holding that "loss of certain privileges while
> in segregation [is] insufficient to support an Eighth Amendment claim" (citing
> *Farmer v. Brennan*, 511 U.S. 825, 835 (1994))).

*Alexander*, 2017 WL 7050641 at *5. Plaintiff, similarly, does not allege that he was denied any

basic human needs. Therefore, his allegations regarding the loss of privileges and toplock sanctions

are insufficient to state an Eighth Amendment claim upon which relief may be granted.

Plaintiff also complains about the electricity restriction he endured. Plaintiff notes that the

caps on the electrical outlets in his cell were not part of the loss of privileges or toplock sanctions.

It is not impossible that being denied electricity for a period of time could impact a prisoner's

health or safety; however, Plaintiff has failed to allege any facts that would support an inference

that his health or safety were endangered by the cell electrical outlets being capped. It appears the

only loss Plaintiff suffered was an inability to use his personal appliances. (Compl., ECF No. 1,

PageID.7 ("[A] cell with a metal cap over the cell[']s electricity outlets denying [Plaintiff the

ability] to utilize any of his appliances").) Plaintiff suggests that the electricity cap denied him the

use of his fan "in a cell with no ventilation making it difficult to breath during sleep and on hot

days above 85 degrees . . . ." (*Id.*, PageID.8.) The Court notes that it was a warm December last

year, but it did not get close to 85 degrees in Carson City, Michigan. This Court found similar

allegations to be insufficient in *Jolly v. Rewerts*, No. 1:24-cv-95, 2024 WL 2932338 (W.D. Mich.

June 11, 2024), stating:

> the only conditions about which Plaintiff complains are the fifteen days' loss of
> privileges and the lack of electricity in his cell from November 22, 2023, to
> December 26, 2023, which deprived him of the ability to use his television, radio,
> JP6 player, fan, or typewriter. Plaintiff asserts that the cell can become hot and
> humid during any season and that December 2023 was one of the hottest Christmas
> seasons to date. (*Id.*, PageID.46.) However, assuming that Plaintiff is correct, even
> an unusually hot December does not signify that temperatures were dangerously
> high during this period. Plaintiff fails to specifically allege any facts showing that
> he had a medical condition that was exacerbated by the lack of a fan or that he
> suffered any physical injuries because of the denial of electricity in his cell during
> the pertinent time period. Because Plaintiff fails to allege any facts showing that he
> faced a serious risk to his health or safety, his Eighth Amendment claims are
> properly dismissed.

*Id.* at *7. Plaintiff here has also failed to identify any consequence of the denial of electrical outlets

that jeopardized his health or safety. Accordingly, he has failed to state an Eighth Amendment

claim relating to his capped outlets.

### D.    Denial or Rejection of Grievances

Plaintiff also complains that one or more Defendants denied his requests for grievance

forms. (Compl., ECF No. 1, PageID.9.) Mishandling or interfering with an administrative

grievance is not active unconstitutional behavior. First, interference with the grievance remedy

does not violate due process because Plaintiff has no due process right to file a prison grievance.

The courts repeatedly have held that there exists no constitutionally protected due process right to

an effective prison grievance procedure. *See Hewitt*, 459 U.S. at 467; *Walker v. Mich. Dep't of

Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir.

2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, actions (or inactions) of these Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Furthermore, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Thus, Plaintiff has failed to state a claim regarding interference with his grievance remedies upon which relief may be granted.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 26, 2024                    /s/ Ray Kent
                                               Ray Kent
                                               United States Magistrate Judge